UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE EGGERT AGENCY, INC., et al.,

    Plaintiff,

vs.

Case No. C2-07-1011
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kemp

NA MANAGEMENT CORPORATION, et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's Partial Motion to Dismiss. For the reasons that follow, the Motion is GRANTED in part and DENIED in part.

### I.

Plaintiffs, Eggert Agency, Inc., Mount Carmel Health System, James Eggert, and Gregory Nickell ("Plaintiffs"), originally filed this action in the Court of Common Pleas of Delaware County, Ohio (Case No. 07-CVH-09-1063) against Defendant Meritain Health, Inc. ("Meritain" or "Defendant"), NA Management Corporation and North American Benefits Agency, Inc. seeking compensatory and punitive damages as well as attorneys' fees.[1] Defendant removed the case to this Court, asserting that this Court has original diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal, ¶ 10, Doc. 3).

As set forth in the Complaint, Defendant Meritain is a third-party administrator of health care plans. Plaintiffs The Eggert Agency, Inc. ("Agency") and Mount Carmel Health Systems

---

[1] Defendants NA Management Corporation and North American Benefits Agency, Inc. were merged out of existence into one entity, Meritain Health, Inc. For purposes of this Opinion and Order, the Court refers to these corporations collectively as "Meritain," as to all transactions after the merger.

owned all the shares of E-V Benefits Management Inc. ("E-V"), also a third-party administrator. Plaintiff James R. Eggert owned the Agency and was the President of E-V. Plaintiff, Gregory R. Nickell, was an employee and officer of E-V. (Complaint, ¶¶ 1-4, Doc. 4).

On September 9, 2003, Plaintiffs entered into a stock purchase transaction with NA Management Corporation ("NAM") for the purchase of E-V shares. The parties entered into a Share Purchase Agreement. (*Id.* at ¶ 13). As a result of the stock purchase, Eggert Agency and Mount Carmel received a Subordinated Cognovit Promissory Note made by NAM and guaranteed by North American Benefits Network, Inc. (NABN) and E-V. (*Id.* at ¶ 14). The Stock Purchase Agreement contained financial terms involving seven-year payouts with adjustments following the third-year anniversary of the transaction. These adjustments to the principal amount were governed a formula related to the average Revenue (as defined) from E-V's business during the three years following execution of the agreements. (*Id.*).

At the time of the transaction, Messrs. Eggert and Nickell had the benefit of certain rights under the E-V Benefits Management Growth Plan, including the right to payments should control of E-V change. (*Id.* at ¶ 4). In particular, Messrs. Eggert's and Nickell were express intended beneficiaries of the stock purchase and Share Purchase Agreement. (*Id.* at ¶ 15). Their rights under the Growth Plan provided for a stipulated payout amount, which was payable quarterly, and was adjustable in the same manner as the promissory note. (*Id.*).

Plaintiffs allege that the clause entitled "Revenue" in the Share Purchase Agreement controlled the adjustments in regard to the payments to be made to the Plaintiffs. (*Id.* at ¶ 16). Plaintiffs allege that this clause was intended to produce revenue by means of NAM/NABN's maintenance, support, and enhancement of E-V's Central Ohio operations. (*Id.* at ¶ 17). Plaintiffs contend that is was important that revenue be generated in full measure through

2

aggressive marketing and upgraded customer service during the three years preceding execution of the agreements because payouts were controlled by a formula related to the revenue during this time period.

Subsequent to the stock purchase, Defendant, Meritain Health Inc., acquired the stock, assets, and business of both NAM and NABN. Plaintiffs allege, however, that even before Defendant's acquisition of NAM and NABN, E-V's Central Ohio business had already begun to attenuate. Plaintiffs contend that Meritain eliminated most of E-V's personnel and nearly extinguished its central-Ohio presence. Plaintiffs maintain that E-V's operations were severely curbed which, in turn, adversely affected revenue.

Based on these occurrences, on September 9, 2007, Plaintiffs filed a Complaint containing six claims, pleaded in the alternative, which are as follows: Breach of Contact (Count I); Breach of Duty of Good Faith and Fair Dealing (Count II); Breach of Duty to Expend Best Efforts (Count III); Breach of Fiduciary Duty (Count IV); Deceit and Misrepresentation (Count V); and Fraud (Count VI).

On October 29, 2007, Defendant filed an Answer as well as a Partial Motion to Dismiss. Defendant moves pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Counts II through VI of Plaintiffs' Complaint on grounds that each fails to state a claim upon which relief can be granted. Defendant maintains that each of these claims arises out of the sale of E-V to Meritain by The Eggert Agency and Mount Carmel, and each seeks damages for Meritain's alleged failure to comply with the obligations contained in the Agreement's definition of Revenue. In essence, Defendant contends that Plaintiffs have alleged only one cause of action for breach of contract as set forth in Count I, and that Counts II through VI are merely alternate ways of restating Count I.

**II.**

Defendant filed an Answer denying the allegations related to all six counts of the Complaint, together with a Partial Motion to Dismiss. Ordinarily, the Motion would be treated as a motion for judgment on the pleadings under Fed. R. Civ. Pro. 12(b)(6), 12(c) & 12(h). *See Haverstick Enters., Inc. v. Financial Fed. Credit, Inc.*, 803 F. Supp. 1251, 1255 (S.D. Mich 1992); *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003). In any event, the standards for considering Defendant's Motion remain essentially the same. *Haverstick*, 803 F. Supp. at 1255 (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)).

Federal Rule of Civil Procedure 12(b)(6) permits a defendant, by motion, to raise the defense of a plaintiff's "failure to state a claim upon which relief can be granted." When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the amended complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) only if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).

Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A federal court cannot consider extrinsic evidence in determining whether a complaint states a

4

claim upon which relief can be granted. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978). Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the federal Rules of civil Procedure which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 296 (2d ed. 1990). The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Dunn v. State of Tenn.*, 697 F.2d 121, 125 (6th Cir. 1982).

Although the complaint must be liberally construed in favor of the party opposing the motion to dismiss, the Court will not accept conclusions of law or unwarranted inferences of fact cast in form of factual allegations. *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1964-65 (2007).[2] A plaintiff's "obligation to provide the 'grounds' of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1964-65). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Id.* To state a valid

---

[2] In the recent *Bell Atlantic* case, the United States Supreme Court abrogated the standard for disposition of a Rule 12(b)(6) motion previously employed by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which provided that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). *See Bell Atlantic*, 127 S. Ct. at 1964 (holding that the *Conley* "no set of facts" language "has earned its retirement" and "is best forgotten").

5

claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Bell Atlantic*, 127 S. Ct. at 1969.

## III.

### A. Count Two: Breach of Duty of Good Faith and Fair Dealing

In Count Two, Plaintiffs claim that Meritain breached the duty of good faith and fair dealing when it commenced dismantling E-V's staff and business. As a result of this disassembly of E-V's personnel and resources, Plaintiffs allege that actual revenue decreased and that the payout features of the Share Purchase Agreement, as derived from the formula set out in the "Revenue" provision, were curtailed.

Defendant contends that Ohio law does not recognize a separate cause of action for breach of the duties of good faith and fair dealing apart from a general breach of contract claim. Defendant refers the Court to several cases that support its argument that "care must be taken to prevent the transmutation of every breach of contract into an independent tort action through the bootstrapping of the general principle of good faith and fair dealing." *Highway Equip. Co. v. Caterpillar, Inc.*, 707 F. Supp. 954, 958 (S.D. Ohio 1989) (internal citation omitted). The duty to act in "good faith" is an implicit term of every contract, and cannot stand alone as a separate cause of action, independent of the underlying claim for breach. *Lakota v. Local Sch. Dist. Bd. of Educ. v. Brickner*, 108 Ohio App. 3d 637, 646, 671 N.E.2d 578 (1996); *Krukrubo v. Fifth Third Bank*, No. 07AP-270, 2007 WL 4532689 *5 (Ohio Ct. App. Dec. 27, 2007) (unpublished) (internal citations omitted). Moreover, "a claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing." *Krukrubo*, 2007 WL 4532689 at *5. Under Ohio law, when the parties have entered into a contract, no separate tort cause of action exists for breach of good faith apart from a breach of such contract. *Northeast*

6

*Ohio College of Massotheraphy v. Burek*, 144 Ohio App. 3d 196, 204, 759 N.E.2d 869 (Ohio Ct. App. 2001); *Lakota*, 108 Ohio App. 3d at 646, 671 N.E.2d at 584; *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 105, 483 N.E.2d 150 (Ohio 1985).

In support of their position that Ohio law permits a party to maintain a claim for breach of the implied covenant of good faith and fair dealing independent of its underlying claim of breach of contract, Plaintiffs rely on *Florence Urgent Care v. Healthspan, Inc.*, 445 F. Supp. 2d 871 (S.D. Ohio 2006) and *Littlejohn v. Parrish*, 163 Ohio App. 3d 456, 839 N.E.2d 49 (Ohio Ct. App. 2005). In the Court's view, these cases are distinguishable. In both *Florence* and *Littlejohn*, in their claims for breach of contract, the plaintiffs asserted, that the defendants had violated the implied duty of good faith and fair dealing. The state courts found that a party may maintain a breach of contract claim when the term allegedly breached is the implied duty of good faith and fair dealing.

In *Florence*, the defendants conducted business as a preferred provider network, and had entered into an ancillary services agreement with the plaintiffs. *Id.* at 873-74. The defendants eventually terminated the agreement with the plaintiffs, which the plaintiffs contended was the result of illegal discrimination. The plaintiffs claimed that the termination evidenced a lack of good faith and fair dealing in violation of obligations under the contract. *Id.* at 873. In particular, with respect to their claim for breach of the implied covenant of good faith and fair dealing, the plaintiffs alleged that defendants had constantly lied to them, and that they had terminated the agreement without cause.

The court in *Florence* reinforced the well-established principle that every contract contains an implied duty of good faith and fair dealing. *Id.* at 879. The court emphasized that the plaintiffs had proffered evidence that defendants had lied about the reasons for the

7

termination of the contract. Rather, the plaintiffs in *Florence* asserted that defendants had terminated the contract under false pretenses, and therefore violated an implied, contractual duty of good faith and fair dealing.

*Littlejohn*, too, is distinguishable. In *Littlejohn*, the plaintiffs executed a mortgage note with the defendants. *Littlejohn*, 163 Ohio App. 3d at 458, 839 N.E.2d at 50. The original note provided that the maker could prepay the note without penalty, but the mortgagor expressly reserved the right to authorize it, by inserting the clause "[a]ny prepayment shall be subject to approval of holder(s) hereof." *Id.* When the plaintiffs sought to prepay the mortgage note, the defendants refused to allow the plaintiffs to make the prepayment. The plaintiffs alleged defendants' refusal was unreasonable and breached the implied obligation in the contract to act with good faith and fair dealing. *Id.* at 459, 839 N.E.2d at 51.

The court in *Littlejohn* reviewed Ohio law and again noted that the duty of good faith in fair dealing is an implied term in all contracts. *Id.* at 462, 839 N.E.2d at 53. Ultimately, the court held that "a party can be found to have breached its contract if it fails to act in good faith." *Id.* at 464, 839 N.E.2d at 54. *Littlejohn* is in accord with the prevailing view under Ohio law that the good-faith and fair-dealing requirement is part of the contract, not a separate tort claim.

In the present case, Count One of Plaintiffs' Complaint is a straight-forward breach of contract claim: Plaintiffs assert that Defendant breached the "Revenue" clause of the Share Purchase Agreement. While the Plaintiffs contend the breach of good faith claim is merely an alternative to the claim of breach of contract, there is no legal foundation for the claim of breach of good faith and fair dealing to stand in the present case. Because a breach of contract claim subsumes a claim for breach of good faith and fair dealing, Count Two of the Plaintiffs' Complaint is dismissed.

8

### B.     Count Three: Breach of Duty to Expend Best Efforts

In Count Three, Plaintiffs allege that consistent with the "Revenue" definition, Defendant was to expend their best efforts to maximize revenue from E-V's business. Plaintiffs allege that Defendant dismantled E-V's business, depressed actual revenue and "curtailed" the "Revenue" provision of the Share Purchase Agreement. The essential allegation in Count Three of Plaintiffs' Complaint is that, as a result of the Share Purchase Agreement, Defendant should have promoted E-V's business by means of Defendant's "best efforts." Plaintiffs maintain that the claim for breach of duty to expend best efforts may stand on its own, even though Count One is a claim for breach of contract. The Court disagrees.

A party does not state an independent claim for relief for breach of an implied covenant when an expressed term of the contract covers the specific matter. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St. 3d 270, 274, 714 N.E.2d 898 (Ohio 1999) (holding that a specific clause in the contract governed the purported breach rather than an implied covenant); *McClorey v. Hamilton Cty. Bd. of Elections*, 130 Ohio App. 3d 621, 626, 720 N.E.2d 954 (Ohio Ct. App. 1998) (holding that the court need not determine if there was an implied covenant because the issue was covered by express language in the lease); *Jost v. Burr*, 69 Ohio App. 3d 354, 359, 590 N.E.2d 828 (Ohio Ct. App. 1990) (holding that there are no implied promises in relation to any matter that is specifically covered by the written terms of a contract).

Defendant contends that the "Revenue" clause in the Share Purchase Agreement covers the duty to expend best efforts. (Motion to Dismiss, at 5). They maintain that the claim to expend its best efforts to maximize revenue from E-V's business involves a matter covered by the written terms of the agreement, and, therefore, no implied covenant can co-exist. The Court agrees, and concludes that Defendant's promise to pay revenue during the period preceding the

9

three-year anniversary of the agreement included a promise to use reasonable, or best efforts to bring profits and revenues into existence.

Plaintiffs have pleaded breach of contract in Count One of the Complaint, and alternatively pleaded breach of good faith and fair dealing and breach of duty to expend best efforts. Counts Two and Three are extraneous to the chief claim of breach of contract in Count One. Plaintiffs, as part of their case against Defendant for breach of the Asset Purchase Agreement, may argue that Defendant breached the agreement by failing to comply with the implied covenants good faith and fair dealing, or duty to expend best efforts. These implied covenants, however, are not separate causes of action. Therefore, Count Three of Plaintiffs' Complaint is dismissed.

### C.     Count Four: Breach of Fiduciary Duty

In Count Four, Plaintiffs allege that Defendant possessed superior knowledge and authority that would allow Meritain to conduct E-V's business so as to maximize revenue and the corresponding benefits to Plaintiffs. Plaintiffs allege that Defendant had a fiduciary duty to preserve, improve and conduct the business of E-V from the time of the Stock Purchase through the Third Anniversary. Plaintiffs allege that Defendant breached the fiduciary duty when it began dismantling E-V.

Under Ohio law, a fiduciary relationship exists when "[a] special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position or superiority or influence, acquired by virtues of this special trust." *Craggett v. Adell Ins. Agency*, 92 Ohio App. 3d 443, 451, 635 N.E.2d 1326 (Ohio Ct. App. 1993) (internal citations omitted). In *Craggett*, the court explained that, "[t]he fiduciary's role may be assumed by formal appointment or it may rise *de facto* from a more informal confidential relationship . . . . [O]ne person comes to rely on and

trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal . . . ." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiffs do not contend they expressly conferred or that Meritain accepted a formal fiduciary appointment. Plaintiffs allege, instead, that a fiduciary relationship arose because they relied on Meritain "to utilize their superior knowledge and authority so as to maximize revenue." (Complaint, ¶ 35.) Defendant moves for dismissal of the claim, asserting that a fiduciary relationship does not exist between parties negotiating arm's-length commercial transactions, as occurred here.

Plaintiffs do not dispute that the Stock Purchase Agreement was the result of extensive arm's-length negotiations. Plaintiffs maintain, instead, that they effectively entrusted their respective property interests to Meritain. According to Plaintiffs, because they have alleged that they reposed their faith and financial fate to Meritain, which held all the power to control their payout entitlements after the Third Anniversary, a fiduciary duty therefore arose.

"Ordinarily in business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated, and therefore, neither party has a duty to disclose material information to the other. *Blon v. Bank One, Akron, N.A.*, 35 Ohio St. 3d 98, 101, 519 N.E.2d 363, 367 (Ohio 1988). When arm's-length negotiations take place between the parties no fiduciary duty is created, such as here.

In the present case, Defendant has moved this Court to dismiss the claim that Defendant breached its fiduciary duty to the Plaintiffs. The transaction that occurred between the parties was the result of arm's-length negotiations. Plaintiff's agreed to this transaction because of

11

NAM's expertise in this area, and believed it would be financially beneficial to sell E-V's shares. Therefore, Count Four of Plaintiffs' Complaint is dismissed.

## D.     Count Five: Deceit and Misrepresentation and Count Six: Fraud

As to Counts Five and Six, Plaintiffs allege that Meritain made affirmative dishonest representations that induced Plaintiffs to enter into the Stock Purchase Agreement. Plaintiffs allege that they entered into the agreement based on the false representations that E-V's staff and business would be retained, nurtured and improved, but Defendant never intended to follow through. Defendant contends that Plaintiffs' tort claims are identical to their breach of contract claims, and, Ohio law prohibits a tort claim based upon the same actions as those that create a contract breach. *See, e.g., Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)("We recognized that a tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed.")

While Defendant's legal conclusion is well founded in Ohio law, Plaintiffs contend that the tort claims they arose due to conduct that occurred prior to the contract formation. The general rule is that tort claims such as deceit and misrepresentation "cannot be predicated upon promises or representations relating to future actions or conduct." *Tibbs v. Nat'l Homes Constr. Corp.*, 52 Ohio App. 2d 281, 286, 369 N.E.2d 1218 (Ohio Ct. App. 1977). An exception to the general rule, however, provides that "where an individual makes a promise concerning future action, occurrence, or conduct, and, at the time he makes it, has no intention of keeping the promise." *Williams v. Edwards*, 129 Ohio App. 3d 116, 124, 717 N.E.2d 368 (Ohio Ct. App. 1998). Plaintiffs allege that, before entering into the contract Defendant never intended to follow through in the future on the promises allegedly made.

Nonetheless, Defendant contends that Plaintiffs' contract and tort claims are mirror images of one another, and that "[i]n Ohio, a breach of contract does not create a tort claim." *Textron Financial Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (Ohio Ct. App. 1996). In support of its argument, Defendant relies heavily on the decision *Texlon Corp. v. Smart Media of Delaware, Inc.*, 2005 WL 2292800 (Ohio Ct. App. Sept. 21, 2005). There, the court held that the tort-based claims were insupportable as a matter of law. *Id.* at *13. The court reasoned that these tort claims were based on the failure to fulfill alleged promises in the contract. That is, the court found that the "misrepresentations" alleged in the tort claims were based on Telxon's failure to fulfill the alleged promises in the underlying contract to invest money. *Id.*

The present case is distinguishable from the *Texlon* case. Plaintiffs' claim falls into the exception of the general rule. More specifically, Plaintiffs claim that, at the time the statements were made, Defendant never intended to keep the promises.

Finally, Defendant contends that the tort claims must be dismissed because they require separate, actual damages resulting from tortuous conduct and, in this case, Plaintiffs have failed to allege any such independent damages. The Court is mindful, however, this case is at the pleading stage. Fed. R. Civ. P. 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for relief sought."[3] Plaintiffs' damages are sufficiently alleged in the complaint in order to withstand a 12(b)(6) motion to dismiss. Plaintiffs indicate that they have been damaged in an amount "at least" equal to the amount of the unpaid notes and various differentials. That language implies that the Plaintiffs seek to

---

[3] When a claim of fraud has been alleged, Fed. R. Civ. P. 9(b) requires the party alleging fraud to state with particularity the circumstances surrounding the fraud. Both Plaintiffs and Defendant, however, failed to discuss this pleading requirement, and the Court finds it inappropriate to address it at this time.

13

recoup a sum of money, but may attempt to seek an amount in excess of their contractual damages. Furthermore, Plaintiffs seek punitive damages, which are recoverable in a fraud action. The Court cannot conclude at this stage of the case that there is no set of facts sufficient to support Plaintiffs' tort claim.

## IV.

Consistent with the foregoing, Defendant's Partial Motion to Dismiss is **GRANTED IN PART as to Counts Two, Three, and Four and DENIED IN PART as to Counts Five and Six.**

**IT IS SO ORDERED.**

_8-12-2008_
Date

Edmund A. Sargus, Jr.
United States District Judge